# Pihs's Lunacy.

*Lunacy—Commitment to insane hospital—Refusal of order—Record—
Certiorari—Appeal.*

1. On an appeal from an order refusing to commit a person to a state
hospital for the insane at the charge of a particular county, the appel-
late court can review nothing but the record. An ex parte affidavit
filed in the clerk's office of the court below after the date of the final
order, cannot be considered.

2. Where a petition to commit a person to a state hospital for the
insane at the charge of a particular county, does not allege, and the rec-
ord does not show, that notice of the application was given to the
county authorities, or that they were cited to appear and answer, the
facts alleged in the petition as to the insanity of the alleged lunatic,
or as to her residence, are not to be taken as admitted. The court is
not bound to make the order without proof to its satisfaction of the
necessary jurisdictional facts, and if it refuses the order on such a con-
dition of the record, the appellate court will presume that the lower
court in so acting was impelled by a legal reason. It is not essential
to the affirmance of its action that that reason appear of record.

Argued March 13, 1912. Appeal, No. 34, Oct. T., 1912,
by Johanna Pihs, from order of Q. S. Phila. Co., Jan. T.,
1912, refusing order for commitment In re Elizabeth
Pihs. Before RICE, P. J., HENDERSON, MORRISON, OR-
LADY and HEAD, JJ. Affirmed.

Petition by Johanna Pihs, sister of Elizabeth Pihs, for
an order on the city and county of Philadelphia for the
support of the said Elizabeth Pihs, at the State Hospital
for the Insane at Norristown.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal of the petition.

*Charles A. Chase,* with him *Joseph Chapman,* for appel-
lant.—The court of quarter sessions has adequate power
to make such disposition of a case as will secure the welfare

of an insane pauper and to order the expenses to be borne by those legally bound for his maintenance: Butler County v. Department of Public Charities, 14 Pa. Superior Ct. 70; Franklin Twp. v. Penna. State Lunatic Hospital, 30 Pa. 522; Shenango Twp. v. Wayne Twp., 34 Pa. 184; Davidson Twp.'s App., 68 Pa. 312; O'Connor's App., 104 Pa. 437; Harmony Twp. Poor Overseers v. Forest County, 91 Pa. 404; Taylor Overseers v. Shenango Overseers, 114 Pa. 394; Milford Twp. Overseers v. McCoy, 2 P. & W. 432; Kelly Twp. v. Union Twp., 5 W. & S. 535; Milton Overseers v. Williamsport Overseers, 9 Pa. 46.

*Eugene C. Bonniwell,* assistant city solicitor, and *Michael J. Ryan,* city solicitor, for appellee.—An insane person cannot select or acquire a new place of residence, and no other person can select or acquire a new place of residence for her: Clinton County v. Clearfield County Poor District, 38 Pa. C. C. Rep. 451.

OPINION BY RICE, P. J., April 15, 1912:

This appeal is, in effect, but a certiorari and brings up for review nothing but the record. Obviously, the record cannot be supplemented or contradicted by the ex parte affidavit that was made and filed in the clerk's office after the date of the final order of the court, and, therefore, that affidavit must be left out of consideration. We can take no other view, in the absence of agreement of counsel as to the matters therein alleged.

The record shows that on January 23, 1912, the following papers were filed: First, petition and affidavit of Johanna Pihs, sister of Elizabeth Pihs, alleging that the latter is insane, that she is poor and without any means whatever, and that she has no relatives who are able to provide for her maintenance, and praying for an order on the city and county of Philadelphia for the support of Elizabeth at the State Hospital for the Insane at Norristown; second, the separate affidavit of the petitioner alleging that Elizabeth has been living in Pennsylvania since Sep-

tember, 1907, that between June, 1909, and August, 1910, she was employed as a domestic at different places in Philadelphia for periods of three months, four months, and six months respectively; that in August, 1910, she left the county of Philadelphia and went to Devon, for a short stay, and from there to Rosemont, and that while at Rosemont she became insane; third, the written consent of the Committee on Lunacy of the State Board of Charities, dated January 11, 1912, to the removal "on or before the twenty-fifth day of January, 1912, of Elizabeth Pihs, a private patient in Pennsylvania Hospital for the Insane, at Philadelphia to the State Hospital for the Insane at Norristown:" fourth, the certificate of two physicians, signed and duly sworn to on August 21, 1911, that they had, within one week prior to that date, at the Philadelphia General Hospital, in the county of Philadelphia, separately examined Elizabeth, that they verily believed her to be insane and that her disease was of a character which required that she should be placed in a hospital or other establishment where the insane are detained for care and treatment. In the statement concerning the patient, which we understand from the appellant's paper-book was annexed to these certificates, it is stated that her residence for the past year, or so much as was known, was Rosemont, and "that her present attack commenced in the latter part of July, 1911," but it is not stated directly or inferentially whether her insanity was of a permanent or of a temporary nature.

At what date these papers were presented to the court does not appear. The only docket entry relating to that matter shows that on February 1, 1912, after argument the petition was refused. At that time the period during which, under the consent given by the Committee on Lunacy of the State Board of Charities Elizabeth could be transferred from one hospital to the other, had expired.

The question for our consideration is not whether, upon due proof of all the facts alleged, the court would have had power to make the order prayed for, but whether,

upon the mere filing and presentation of these papers, it was the imperative duty of the court to make it. Unless this question must be answered in the affirmative, it cannot be said that error of law appears in the record, but it must be presumed on appeal that the court refused to make the order for a legal reason. Considering the case in the light of the general principles applicable to appellate jurisdiction upon certiorari, it is to be noticed in the first place, that the petition did not allege, and the record as it stood at the time the order was made did not show, that due notice of the application was given to the city and county of Philadelphia, which was to be affected by the order; also, that the petition did not pray for any citation or rule upon the latter to appear and answer. Hence, we cannot agree with appellant's counsel that the facts alleged in the petition were to be taken in the court below or are to be taken here as admitted. It is to be noticed, in the second place, that the certificates of the two physicians related to the condition of Elizabeth Pihs five months before the petition was filed, and as already pointed out they showed nothing as to her condition at the time it was filed. True, the petitioner alleged that she was insane at that time, but we cannot say that the court was bound to take her averment as verity without further proof. In the third place, passing the objection raised by appellee's counsel, that the allegations as to residence and settlement in Philadelphia are vague, it is to be noticed that these are allegations of fact, and for the reasons already suggested the court was not bound to accept them as verity without other proof, or to treat them as immaterial surplusage which did not require proof. Another point to be noticed is that the record does not show that it was alleged that an application had been made to the Director of Charities in Philadelphia by the petitioner or by the hospital in which she was under treatment. We do not say that this was fatal to the application. For present purposes it may be conceded that her sister had such interest as would enable to make it.

The grounds of our decision are, that though the jurisdiction of the court to make the order upon proper application made by her, yet, as her right to the order depended upon allegations of fact, the court was not bound to make it without other proof, to its satisfaction, of the necessary jurisdictional facts, and it is not to be presumed on this appeal that such proof was made or tendered. It is thus seen that error of law does not affirmatively appear on the record and that there is nothing to repel the presumption that the court in refusing to make the order was impelled by a legal reason. It is not essential to the affirmance of its action that that reason appear of record. Thus viewing the case, we do not deem it necessary or appropriate to discuss all of the questions that are suggested in the argument of appellant's counsel as to the mode of procedure to be followed in the removal of this person from the hospital where she now is to the state hospital.

The order is affirmed.